### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**GHAISAA AFIOUNI,**

       Plaintiff,

  v.

Case No.

Hon.

**ARAB COMMUNITY CENTER FOR
ECONOMIC AND SOCIAL SERVICES
(ACCESS)**, a Michigan corporation,
,

       Defendant.

_____/

DEBORAH K. SCHLUSSEL (P56420)
LAW OFFICE OF DEBBIE SCHLUSSEL
Attorney for Plaintiff
29477 Laurel Woods Drive
Southfield, MI  48034
(248) 595-8600

_____/

### **COMPLAINT**

      NOW COMES Plaintiff, GHAISAA AFIOUNI, by and through her attorney, DEBORAH

K. SCHLUSSEL, and for her Complaint, states as follows:

### **JURISDICTION AND VENUE**

      1.     This action presents various Constitutional, statutory, and common law

claims arising under the First and Fourteenth Amendments to the United States Constitution, the

Michigan Constitution of 1963, the Civil Rights Act of 1964, Title VII,  42 U.S.C., Section 1983

*et seq*., the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., and 42 U.S.C. Section 2000e –

3(a).  Jurisdiction is conferred upon this Court, pursuant to 28 U.S.C., Sections 1331 and 1343.

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

2.      Plaintiff's claims for equitable, declaratory, and injunctive relief are authorized pursuant to 28 U.S.C., Sections 2201 and 2202, 42 U.S.C. Section 1983 *et seq*., Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

3.      Pursuant to 42 U.S.C. Section 1983, other applicable law, this Court is justified to award nominal, compensatory, and punitive damages, and equitable relief against the Defendant Arab Community Center for Economic and Social Services (ACCESS) for the past and ongoing violations of Plaintiff's Constitutional rights and the harm caused by its (Defendant's) actions.

4.      This Court is justified to award reasonable costs of litigation, including attorneys' fees and expenses, pursuant to the Civil Rights Act of 1964, 42 U.S.C. Section 1983 *et seq*., the Elliott-Larsen Civil Rights Act, 42 U.S.C. Section 2000e – 3(a), and other applicable law.

5.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. Section 1391 because all Defendants reside within this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

6.      Plaintiff has exhausted all available administrative remedies.  Plaintiff filed a complaint regarding the discrimination alleged herein with the Equal Employment Opportunity Commission ("EEOC") and has obtained a "right to sue letter" from the EEOC, attached as Exhibit A.

## PLAINTIFF

7.  Plaintiff Ghaisaa Afiouni (hereinafter referred to as "Afiouni") was employed by

Defendant Arab Community Center for Economic and Social Services (ACCESS) (hereinafter referred to as "ACCESS") for over nineteen (19) years.  She oversaw a number of community programs using government and agency funds, including a program called WIOA.  At all relevant times herein, Plaintiff Afiouni was a member of a class of protected persons under 42 U.S.C., Section 1983 *et seq*., and the Elliott-Larsen Civil Rights Act of Michigan, MCL 37.2101 *et seq*.  Ms. Afiouni is a non-practicing Sunni Muslim, which is disfavored at the Shi'ite-dominated Defendant ACCESS because she is neither Shi'ite, nor religious—both practices that are routinely discriminated against at and by Defendant ACCESS.

**DEFENDANT**

8.   Defendant ACCESS is a non-profit corporation with headquarters and a registered office located in the City of Dearborn, Michigan.  ACCESS, which receives millions of dollars per year in government and private funds and grants, was established and is organized under the laws of Michigan, with the authority to sue and be sued in its own name.  ACCESS is a welfare agency, and promulgates the policies, practices, customs, and usages in furtherance thereof.  At all relevant times herein, ACCESS was a "person" acting under the color of state law pursuant to 42 U.S.C. Section 1983, and an "employer" pursuant to the Elliott-Larsen Civil Rights Act of Michigan, MCL 37.2101 *et seq*.

**COMMON ALLEGATIONS**

9.   Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

10. Plaintiff Afiouni was hired by ACCESS in 2002, and she worked there for nineteen

(19) years until she was constructively terminated through an ever-escalating hostile work environment and ultimately actually terminated in 2021.

11.    Plaintiff is of the Sunni religious sect of Islam and is not religious.  As such, she was a minority within the confines of her former employer, Defendant ACCESS, where Shi'ite Muslims and devout Muslims are the majority.  As a non-Shi'ite and a non-devout Muslim, Plaintiff was in the distinct minority and a member of two protected classes as an employee at ACCESS, subject to very discernible and palpable religious discrimination.

12.  Plaintiff's status as a non-religious and Sunni Muslim, particularly a female one, formed the basis of the discrimination and denial of job promotions and salary raises to which Plaintiff was subjected.  In over 19 (nineteen) years of employment at ACCESS, Plaintiff rarely got any job raises and, when she was fired, she was only earning a salary in the $40,000 (forty-thousand dollar) range after those 19 (nineteen) years of service, while Shi'ite Muslims and devout Muslims with far less seniority and experience were regularly given promotions and salaries much higher than Plaintiff.

13.  Further, Plaintiff was subject to sexual harassment by her supervisor and by some clients of ACCESS and beneficiaries of government-funded and NGO agency programs she oversaw.  When she complained, she was subject to blatant illegal retaliation, harassment, and further persecution and more discrimination such as denial of job promotions and salary raises, in retaliation for reporting the sexual harassment.

14.    Further, as a result both of her status as a non-religious Muslim, a Sunni Muslim, and a victim of sexual harassment who reported the harassment to her superiors, Defendant ACCESS and its personnel engaged in a pattern of harassment, discrimination, and retaliation against Defendant that included a deliberate campaign to spy on her, prevaricate and fabricate

false "mistakes" and "errors" by her in order to get her in trouble, and a number of other actions designed to frame her for malfeasance and incompetence in order to create false, pretextual reasons to fire Plaintiff.

15. Lina Hourani-Harajli, (hereinafter, "Harajli") ACCESS' Chief Operating Officer, is in operation, the real Chief Executive Officer of Defendant ACCESS. Harajli, who sanctioned and fostered the harassment of Plaintiff, is a devout Shi'ite Muslim and an open supporter of the intolerant Shi'ite Muslim terrorist group Hezbollah which mass-murdered over 300 U.S. Marines and Embassy officials in the 1983 bombings of Marine Barracks and the U.S. Embassy in Beirut and perpetrated countless other kidnappings and torture-murders of U.S. citizens including Navy Diver Robert Dean Stethem, United Nations peacekeeper Col. William R. "Rich" Higgins, and U.S. Embassy CIA Chief William Francis Buckley. Hezbollah is on the State Department terrorist list and has been designated by the U.S. Treasury Department as a Specially Designated Global Terrorist Entity.

16. Though Defendant ACCESS is supposed to be a non-denominational non-profit welfare agency (supported by tax funds and receiving federal non-profit status), it is dominated by devout Shi'ite Muslims, and those who do not share the Shi'ite sect's faith and/or are not devout, practicing Muslims are made to feel unwelcome, including through a hostile work environment that is ever-present for non-Shi'ites and non-devout, non-practicing Muslims. Further, ACCESS illegally uses non-profit and government funds to promote Shia Islam, hatred of Israel and Jews, and the "merits" of various Islamic terrorist groups.

17. ACCESS was founded by Ismael Ahmed to attempt to get corporations to divest from the State of Israel. ACCESS officials lobbied against federal counter-terrorism laws signed into law by President William J. Clinton, which made it illegal for Americans to contribute to

Hezbollah (again, this is a Shi'ite organization) and various other Islamic terrorist groups. ACCESS financed and sponsored the 2002 University of Michigan "Divestment" (from Israel) conference at which convicted Islamic terrorist Sami Al-Arian, a founder of Palestinian Islamic Jihad, was the keynote speaker and at which "Annihilate the Jews!" was chanted by participants.

18. Harajli illegally used her position at ACCESS to illegally promote Shi'ite Islam and support for Islamic terrorist groups, and to use Shi'ite Islamic heritage for discriminatory and illegal preferences in hiring, promotions, salaries, and disciplinary actions with regard to ACCESS employees. Harajli also discriminated against employees who were not Shi'ite Muslims.

19.　Although ACCESS is nominally run by Maha Freij, who holds the titles of President and Chief Executive Officer, she is largely a figurehead, and the real chief of ACCESS is Harajli. She sets the tone, internal policies, and conditions of employment at ACCESS, and she is responsible for fostering the hostile work environment there.

20. Harajli, since assuming duties as ACCESS' COO, has systematically discriminated against non-Shi'ite, non-religious employees, and has terminated, demoted, or reassigned them because of their beliefs, expressions, and associations, and/or because they are not Shi'ite Muslims, do not have Shia Muslim beliefs, expressions, and associations. She has given salary increases, vacation time, and other perks and benefits of employment based on Shi'ite Muslim status. Harajli acts in this manner because non-Shi'ite, non-religious beliefs are inconsistent with her personal Shi'ite Muslim beliefs and has imposed and promoted a form of Shi'ism at ACCESS, through selective promotions, salary raises, and other perks and conditions of employment. Those who are not Shi'ite Muslims and whose who are not devout Muslims are given second-class status at ACCESS.

21. Harajli's illegal, unconstitutional preference for Shi'ite Muslim employees at a tax-funded non-profit—in full view and with the full knowledge of Defendant ACCESS—are relevant to the instant action because they are part and parcel of the discrimination against the non-Shi'ite, non-devout Plaintiff in the instant action and the hostile work environment that Harajli and her agents and immediate subordinates imposed upon Plaintiff in the instant action because Plaintiff is not Shi'ite and not an observant Muslim and because Plaintiff reported (and rebuffed) sexual harassment by ACCESS superiors and clients, which resulted in retaliation against Plaintiff.

22. Harajli, herself and through her agents and immediate subordinates, repeatedly harassed Plaintiff and imposed hostile and impossible conditions on Plaintiff, so that she would leave ACCESS' employ, and so that Harajli could accelerate her pattern of replacing non-Shi'ite and non-devout Muslim personnel with Shi'ite and devout Muslim staff members, particularly those who are Shi'ite. When the imposition of a hostile work environment, impossible work conditions, and pretextual reasons to question Plaintiff's job performance and competence did not work in forcing Plaintiff to quit, Harajli got personnel to actually fire Plaintiff.

23. A growing pattern of discrimination against non-Shi'ites and non-devout Muslims at ACCESS is evident and escalating.

24. Since Plaintiff's employment at ACCESS began, she was subject to a repeated pattern of discrimination based on her religious sect and lack of devotion to Islam, all of it orchestrated by Harajli and her agents.

25. Defendant denied Plaintiff promotions, salary increases, and other benefits which were given to Shi'ites and devout Muslims in similarly situated positions who had less experience and fewer credentials than Plaintiff.

7

26.     Non-Shi'ite and non-devout Muslim employees at ACCESS were made to feel uncomfortable.  In fact, one Christian employee had her Cross yanked from her neck by an ACCESS official.  Harajli allowed devout Muslim employees paid time off for Ramadan without having to use vacation days, but required other employees to utilize vacation days to take time off.  She regularly expressed her disdain for Sunni Muslims and for non-observant Muslims, as well as sexual harassment whistleblowers.

27.     Because of this, Plaintiff felt afraid with regard to her non-devotion to Islam and her status as a Sunni Muslim.

28.     ACCESS made a point of hiring employees with the sole purpose of spying on Plaintiff, and ACCESS officials brazenly stated that this was the purpose. ACCESS superiors engaged in excruciating, nitpicking scrutiny of Plaintiff's employment and work product, using it as a pretext for job criticism and evaluations.  None of these practices applied to Shi'ite Muslim employees and devout Muslim employees.  There was a pattern of "breathing down the neck" of Plaintiff, who was regularly persecuted for minor mistakes, but the same treatment was not given to Shi'ite Muslim and devout Muslim employees.  Further, an employee who was supervised by Plaintiff was given incentives to "tattle," spy, and report on Plaintiff, and to take actions to set up and "frame" Plaintiff make it look like Plaintiff was incompetent, had not completed required document checks, and had cost ACCESS tens of thousands of dollars, when Plaintiff had actually done nothing of the sort.  Defendant ACCESS' personnel used the height of the COVID pandemic, when Plaintiff worked from home, to pretend that Plaintiff had access to documents and signed off on them, when that actually wasn't the case.

29.  There was an atmosphere of racism and bigotry at ACCESS, and Plaintiff was regularly ridiculed because she did not fit the "preferred" type and also because she complained about sexual harassment.

30.     Plaintiff had  impeccable skills and experience for her position.  Yet, she was harassed because she is Sunni (her religious association), not Shi'ite, and because she is not religious (her form of  religious expression is not to practice it).  Defendant ACCESS' outrageous actions outlined herein constitute an affront to justice and Plaintiff must be vindicated.

31.     The pattern and practice of Defendant ACCESS, in its conduct as set forth above is well known in the community, yet the Defendant ACCESS did nothing to stop these practices. Plaintiff had a right to be protected from intentional and wrongful conduct by Defendant ACCESS, which resulted in injuries to Plaintiff and violated Plaintiff's civil rights.

32. Defendant ACCESS had a duty to Plaintiff under the United States Constitution and the Federal Civil Rights Laws, specifically including 42 U.S.C. Section 1983 *et seq*., 42 U.S.C. Section 2000e-3(a), and the 4th, 5th, and 14th Amendments to the United States Constitution as well as applicable sections of the Michigan Constitution, to refrain from acting or failing to act so as to violate Plaintiff's civil rights.

33. Defendant breached its duties to the Plaintiff and violated Plaintiff's civil rights by its actions and omissions and failures to act as pleaded herein, and further, Defendant had both the duty and the power to prevent or aid in the prevention of the commission of said wrongful acts against the Plaintiff and prevent the violation of Plaintiff's civil and Constitutional rights, but neglected and refused to do so.

34. It was the policy, practice, custom, and usage of Defendant ACCESS to encourage,

tolerate, acquiesce, and ratify violations of the civil rights of persons by conduct and inactions which were grossly negligent and/or deliberately indifferent to the civil rights of persons and Constitutional violations committed by Defendant ACCESS.

35. As a direct and proximate result of Defendant ACCESS' unlawful actions, Plaintiff has sustained injuries and damages including but not limited to loss of sick days/vacation time, loss of career opportunities, potential loss of earnings and earning capacity, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the infringement upon the right to pursue gainful occupation of choice, and incurred substantial liability for attorney fees.

36. The policy, practice, custom, and usage of Defendant ACCESS and its conduct and inactions, was a proximate cause of the violations of Plaintiff's civil rights and of the injuries and damages to the Plaintiff set forth herein.

37. Plaintiff had a right to be protected from the wrongful conduct by Defendant ACCESS which conduct resulted in injuries and damages to the Plaintiff as set forth herein.

**FIRST CLAIM FOR RELIEF**
**Free Exercise—First Amendment**
**(42 U.S.C. Section 1983)**

38.  Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

39. By reason of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of law, Defendant ACCESS deprived Plaintiff of her right to religious exercise in violation of the Free Exercise Clause of the First Amendment as applied to

the States and their political subdivisions under the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. Section 1983.

40. Defendant ACCESS further violated Plaintiff's right to religious exercise by

targeting Plaintiff for discriminatory and arbitrary enforcement of its policies, practices, customs

and usage on account of Plaintiff's religious practices and beliefs.

41. As a direct and proximate result of Defendant ACCESS' violations of the Free

Exercise Clause of the First Amendment, Plaintiff has suffered irreparable harm, including loss

of her Constitutional rights, entitling her to declaratory and injunctive relief and damages as set

forth in the common allegations of this Complaint.

### SECOND CLAIM FOR RELIEF
### Freedom of Speech—First Amendment
### (42 U.S.C. Section 1983)

42. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this

Complaint as though repeated herein.

43. By reason of the aforementioned policy, practice, custom, and usage, acts and

omissions, engaged in under color of State law, Defendant ACCESS deprived Plaintiff of her

right to religious expression in violation of the Free Speech Clause of the First Amendment as

applied to the States and her political subdivisions under the Fourteenth Amendment to the

United States Constitution and 42 U.S.C. Section 1983.

44. As a direct and proximate result of Defendant ACCESS' violations of the First

Amendment, Plaintiff has suffered irreparable harm, including loss of her Constitutional rights,

entitling her to declaratory and injunctive relief and damages as set forth in the common

allegations of this Complaint.

### THIRD CLAIM FOR RELIEF
### Freedom of Expressive Association—First Amendment
### (42 U.S.C. Section 1983)

45.  Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

46.  By reason of the aforementioned policy, practice, custom, and usage, acts and omissions, engaged in under color of State law, Defendant ACCESS deprived Plaintiff of her right to expressive association guaranteed by the First Amendment under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

47.  As a direct and proximate result of Defendant ACCESS' violations of the First Amendment, Plaintiff has suffered irreparable harm, including loss of her Constitutional rights, entitling her to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

### FOURTH CLAIM FOR RELIEF
### Equal Protection—Fourteenth Amendment
### (42 U.S.C. Section 1983)

48.  Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

49.  By reason of the aforementioned policy, practice, custom, and usage, acts And omissions, engaged in under color of State law, Defendant ACCESS deprived Plaintiff of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983 by discriminating against Plaintiff in the application of its acts, policies, practices, custom, and usage, and

12

omissions on account of Plaintiff's exercise of her religion, speech, and associations, thereby treating Plaintiff on less than equal terms.  Defendant ACCESS targeted Plaintiff for discriminatory and arbitrary treatment on account of Plaintiff's religion, speech, and associations, thereby infringing upon Plaintiff's fundamental rights.  Defendant ACCESS treated Plaintiff differently than other similarly situated individuals based upon her religion, expression, and association, thereby infringing on Plaintiff's fundamental rights.

50. As a direct and proximate result of Defendant ACCESS' violations of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered irreparable harm, including loss of her Constitutional rights, entitling her to declaratory and injunctive relief and damages as set forth in the common allegations of this Complaint.

## FIFTH CLAIM FOR RELIEF
### Religious Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964
### (482 U.S.C. Section 2000e *et seq*.)

51.     Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

52. At all relevant times, Plaintiff was an employee and Defendant was an employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, as amended, 482 U.S.C. Section 2000e, *et seq*.

53.   Plaintiff is a member of a protected class:  she is a Sunni Muslim and a non-observant Muslim.

54.   At all times, Plaintiff performed her job duties in a manner that was satisfactory or better.

55.   Defendant's treatment of Plaintiff, as described above, was based at least in part

on the unlawful consideration of her religion and religious status.

56. Similarly situated Shi'ite Muslims and devout Muslims were treated better in the terms and conditions of their employment.

57. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

58. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**SIXTH CLAIM FOR RELIEF**
**Elliott-Larsen Civil Rights Act**
**(MCL 37.2101 *et seq.*)**

59. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

60. At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

61. Plaintiff's religious beliefs, expressions, and associations were factors that made a difference in Defendant's decision to subject them to wrongful and discriminatory treatment as described herein.

62. Defendant ACCESS, through its agents, representatives, and employees,

specifically including but not limited to Harajli and other ACCESS personnel (and ACCESS policies), treated Plaintiff differently from similarly situated Shi'ite Muslim and devout Muslim employees, based on unlawful consideration of religion, expression, and free associations. This constituted unlawful discrimination.

63. Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

64. As a direct and proximate result of Defendant ACCESS' unlawful actions, Plaintiff sustained injuries and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## SEVENTH CLAIM FOR RELIEF
### Retaliation – Civil Rights Act
### (42 U.S.C. Section 2000e – 3(a))

65. Plaintiff re-alleges and incorporate by reference all prior paragraphs in this Complaint as though repeated herein.

66. At all relevant times, Plaintiff and Defendant were covered by 42 U.S.C. § 2000e-3(a) because they reported Defendant reported sexual harassment at the hands of ACCESS superiors and clients.

67. Defendant ACCESS harassed Plaintiff because she filed complaints and Defendant retaliated and further discriminated against her on that basis.

68. Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

69. By retaliating against Plaintiff after she complained about sexual harassment by superiors and clients, Defendant violated Plaintiff of her right, pursuant to 42 U.S.C. Section 2000e-3(a), to report Defendants' discriminatory and arbitrary enforcement of policies, practices, customs and usage on account of Plaintiff's religious sect, practices, and beliefs.

70. As a direct and proximate result of Defendant's unlawful actions of retaliation in violation of 42 U.S.C. Section 2000e-3(a), Plaintiff suffered irreparable harm and sustained damages and injuries, including loss of his Constitutional rights, entitling him to declaratory and injunctive relief and damages including, but not limited to, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court:

a)  enter judgment declaring that Defendant ACCESS violated the United States Constitution as set forth in this Complaint;

b)  enter judgment declaring that Defendant ACCESS violated the Michigan Constitution of 1963 as set forth in this Complaint;

c)  enter judgment declaring that Defendant ACCESS' policies applied to Plaintiff as outlined herein are unconstitutional on their face and unconstitutional as applied to Plaintiff;

d) award all appropriate damages, including nominal, compensatory, and punitive damages against Defendant ACCESS, pursuant to applicable law;

e)   order that Defendant ACCESS purge and clear Plaintiff's respective employment

records and any related records of any negative or unfavorable information related in any way to any matter set forth herein;

      f)  order that Defendant pay Plaintiff lost wages and benefits, past and future, including full reimbursement of all sick and vacation days;

      g)  retain jurisdiction of this matter for the purpose of enforcing this Court's orders;

      h)  award Plaintiff their reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. Section 1988,  42 U.S.C. Section 2000e-3(a), and the Elliot-Larsen Civil Rights Act, and other applicable law; and

      i)   statutory costs; and

      j)   grant such other and further relief as this Court deems appropriate.

### JURY DEMAND

      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.


                       Respectfully submitted,


                       By: s/Deborah K. Schlussel
                       Deborah K. Schlussel (P56420)
                       Law Office of Debbie Schlussel
                       29477 Laurel Woods Drive
                       Southfield, MI  48034
                       (248) 595-8600
                       WriteDebbie@gmail.com

Dated:  October 4, 2022